IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GLORY CHINYERE OBI | * |
| v. | * Civil No. – JFM-13-3820 |
| VANTAGE HOUSE | * |

## MEMORANDUM

Plaintiff has alleged that her employment was terminated by her former employer, Vantage House, because of her pregnancy, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2 *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) and the Maryland Civil Rights Act, MD Code, State Gov't §§ 20-601 *et seq.* Discovery has been completed, and defendant has moved for summary judgment. Although defendant properly concedes that "a reasonable jury might disagree with the decision to terminate Plaintiff from her job," Defendant's Memorandum in Support of Its Motion for Summary Judgment, at 23, defendant's motion will be granted.

I.

Plaintiff's employment was terminated after she refused to come to work on April 27 and April 28, 2012. It is undisputed that prior to the termination of plaintiff's employment, defendant knew that she was pregnant.[1] It is also undisputed that plaintiff was an at-will

---

[1] There is a dispute as to when defendant learned that plaintiff was pregnant but this dispute is immaterial since it is undisputed that defendant was aware of the pregnancy prior to its termination of plaintiff's employment. Plaintiff contends that on April 13, 2013, her supervisor, Barbara D'Anna, learned that she was pregnant. Although defendant agrees that it was on that date that it learned that plaintiff was pregnant, Ms. D'Anna and Paul Dutton, defendant's director of human resources, recall that during a meeting plaintiff volunteered that she was pregnant.

1

employee, that she was obtaining a nursing degree, and that she was a part-time worker for defendant, working on Friday and Saturdays.

Prior to the termination of her employment, the following events occurred. On April 7, 2012, the charge nurse on duty, Leta Paul, accused plaintiff of failing to do rounds, watching movies on her laptop computer instead. Plaintiff disputed that fact. Nevertheless, Ms. Paul instructed plaintiff to leave the building. Plaintiff continued to insist that she had done her rounds. Ms. Paul filled out a form repeating her contention that plaintiff had failed to perform her rounds and accusing her of insubordination. Plaintiff was suspended for two days, April 13, 2012 and April 14, 2012, pending an investigation of the occurrence. On April 13, 2012 (the next day that plaintiff was scheduled to work at defendant's facility) plaintiff received a notice of her suspension.

On April 13, 2012, plaintiff met with Ms. D'Anna and Paul Dutton. She continued to deny that she had not done her rounds. On April 16, 2012, she sent an email to Ms. D'Anna, explaining her side of the story and again denying the allegations. Ultimately, after defendant had conducted its investigation, it was determined that Ms. Paul's claim that plaintiff did not complete her rounds was unsubstantiated but the charge of insubordination was found to be credible. Because plaintiff had been cleared of the more serious charge, she was paid for the days of work that she missed during the investigation (April 13 and 14, 2012).

After April 14, 2012, plaintiff spoke to Mr. Dutton several times, inquiring when she could return to work. Mr. Dutton told her that she would have to have a note from her doctor saying that she could perform her duties as a geriatric nursing assistant. Plaintiff also attempted

---

Plaintiff denies that fact. Clearly, however, defendant was aware of plaintiff's pregnancy when it received from her doctor a medical clearance form, an event that occurred prior to the termination of plaintiff's employment.

to speak with Ms. D'Anna over the telephone, but Ms. D'Anna did not return her calls. The record reflects that the reason that Ms. D'Anna did not return her calls was that Ms. D'Anna did not believe it was appropriate for her to talk to plaintiff until the investigation had been concluded.

Plaintiff did not receive her medical clearance form from her doctor until on or about April 23, 2012. Therefore, she could not work on April 20 and 21. Although her personal leave time was charged, she was paid for the work she missed those days.

Ms. D'Anna attempted to speak to plaintiff over the phone on April 27. Plaintiff was not at home but Ms. D'Anna left voicemail messages for her. She believes that she finally reached plaintiff by telephone around 3:30 pm. Plaintiff estimates that she received the call around 4:30 pm or 5:00 pm. Ms. D'Anna told plaintiff that she could return to work that night and the following day. Plaintiff told Ms. D'Anna that she already had an engagement and would not return to work. Ms. D'Anna told her that she was on the schedule and needed to come to work. Plaintiff repeated that she would not be able to return that night because of an engagement. Plaintiff did not report to work on April 27, 2012 or April 28, 2012.

Plaintiff's employment was terminated on May 3, 2012.

II.

Plaintiff's claim fails for two reasons. First, she has presented no evidence that after her employment was terminated, the position she had filled remained open or was filled by a similarly qualified applicant outside the protected class – the fourth element of plaintiff's *prima facie* case that plaintiff is required to prove. *See Hill v. Lockheed Martin Logistics Mgt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Indeed, the record seems to suggest that defendant was trying to rid itself of unproductive employees. In that regard, email exchanges between Ms. D'Anna

3

and Chris Newport, the former Administrator of defendant, refers to "cleaning"[2] and to the fact that Ms. D'Anna could do without plaintiff in light of the fact that she had already done so for three weekends.[3]

Although a somewhat closer question, it also appears that even if plaintiff was able to establish a *prima facie* case of pregnancy discrimination, defendant has come forward with a non-pretextual reason for its termination of plaintiff's employment. Unquestionably, plaintiff refused to come to work on April 27 and April 28, 2012. Defendant contends that by doing so, plaintiff violated defendant's "No Call/No Show" policy. It is not clear to me that plaintiff did so. The policy provides that "[t]he failure of an employee to report to work for the full shift without calling or without prior approval from the immediate supervisor will be recorded as a "No Call/No Show," and that two violations of the policy "will result in termination." Here, the evidence is clear that plaintiff was in contact with Ms. D'Anna prior to her non-appearance at work on April 27 and April 28, 2012, and, as I read the policy, that contact would be sufficient to constitute a "call," thereby removing plaintiff from the "No Call/No Show" policy. However, in support of its summary judgment motion, defendant has submitted Mr. Dutton's affidavit stating that "[i]f a supervisor does not approve the absence it is a "No Call/No Show." Plaintiff has presented no evidence to rebut this statement.[4]

---

[2] In one email the word "cleaning" is followed by "Next one," and a redacted name.

[3] Of course, if plaintiff were able to produce direct evidence of pregnancy discrimination, she would not need to rely upon a *prima facie* case. However, she has produced no admissible evidence that the termination of her employment was motivated by pregnancy discrimination. She relies simply upon her observations, not based on personal knowledge, that other pregnant employees were discriminated against and the fact that defendant did not produce evidence that other pregnant employees were not discriminated against. Of course, defendant does not carry the burden of proof on this issue.

[4] Mr. Dutton's affidavit also states that at the time of the events in question, non-pregnant employees were also required to produce a medical clearance when there was a change in

For these reasons, defendant's motion for summary judgment will be granted. A separate order to that effect is being entered herewith.

Date:   October 31, 2014          /s/
                                  J. Frederick Motz
                                  United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 OCT 31 PM 12:07

CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY